IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CINDY L. BUCKNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV375 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Cindy Buckner ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on January 6, 2004, alleging a disability onset date of November 30, 2001. (Tr. at 47, 51.)[2] Her application was

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #5].

denied initially and upon reconsideration. (Tr. at 31-32.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 33.) Present at the hearing, held on August 7, 2007, were Plaintiff, her attorney, her husband, and a vocational expert. (Tr. at 15.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 29) and, on March 18, 2010, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 3).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.
>
> 2. The claimant has not engaged in substantial gainful activity since December 1, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).
> . . . .
>
> 3. The claimant has the following severe impairments: multiple symptoms consistent with multiple sclerosis without definitive diagnosis; cervical radiculopathy; degenerative disc disease of the lumbar spine at L4-L5; and history of asthma (20 CFR 404.1520(c)).
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 494.1525, and 404.1526).
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work with the following limitations: lift/carry 20 pounds occasionally and 10 pounds frequently; stand six hours in an eight hour day; walk six hours in an eight hour day; sit six hours in an eight hour day; requires the opportunity to alternate sitting and standing hourly; occasional climbing of stairs; no climbing of ladders; occasional

balancing, stooping/bending, kneeling, crouching/squatting; no more than frequent reaching and handling; avoid exposure to temperature extremes, fumes, odors, poor ventilation; avoid workplace hazards such as unprotected heights and hazardous machinery; retains the mental ability to perform simple, unskilled work and to interact appropriately with coworkers and supervisors.

(Tr. at 17, 23, 25.)

In light of the above findings regarding residual functional capacity ("RFC"), along with the vocational expert's testimony, the ALJ determined that Plaintiff was not under a "disability," as defined in the Act, from her alleged onset date through the date of the decision. (Tr. at 28.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id.

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: multiple symptoms consistent with multiple sclerosis without definitive diagnosis; cervical radiculopathy; degenerative disc disease of the lumbar spine at L4-L5; and a history of asthma. (Tr. at 17.) The ALJ found at step three that these impairments did not meet or equal a disability listing. Therefore, Plaintiff's RFC was assessed, and the ALJ determined that Plaintiff only could perform unskilled, light work with further limitations. These limitations required, in pertinent part, that Plaintiff walk, sit, and stand for no more than

---

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

six hours each in an eight-hour workday and that she be given the opportunity to alternate between sitting and standing hourly. (Tr. at 25.) Based on this determination, the ALJ concluded under step four of the analysis that Plaintiff could not return to her past relevant work. The ALJ then concluded at step five, that, given Plaintiff's age, education, work experience, and RFC, she could perform other jobs available in the community and was therefore not disabled. (Tr. at 27-28.)

In this appeal, Plaintiff challenges the ALJ's RFC assessment and her related determination at step five, arguing that the ALJ reversibly erred by finding her "capable of standing, walking, and sitting for 6 hours per day despite the need to alternate sitting and standing." (Pl.'s Br. [Doc. #8] at 3.) In particular, Plaintiff claims that the ALJ's RFC findings "are not consistent with the applicable regulatory standards," namely, Social Security Rulings 83-10 and 83-12 (hereinafter "SSR 83-10 and SSR 83-12"). She contends that, when considered together, "the standards of SSR 83-12 and SSR 83-10 establish the legal principle that a claimant who must alternate sitting and standing cannot stand, walk, or sit for 6 hours per day." (Pl.'s Br. at 6-7.) Moreover, Plaintiff posits that the ALJ erroneously relied upon the vocational expert's hearing testimony, which, because it assumed that Plaintiff is able to stand, sit, and walk for six hours a day despite her need to alternate between sitting and standing, is unreliable. (Pl.'s Br. at 7.) Defendant correctly counters that Plaintiff's interpretation of SSR 83-10 and SSR 83-12 is untenable and urges that substantial evidence supports the Commissioner's determination. (Def.'s Br. [Doc. #10] at 8, 11.)

Social Security Ruling 83-10 clarifies the way in which the SSA's medical-vocational guidelines ("the grids") address the issue of a claimant's ability to perform other work. See Hyatt v. Apfel, No. 97-2225, 1998 WL 480722, at *3 (4th Cir. Aug 6, 1998) (unpublished).[6] Among other things, SSR 83-10 "contains elaborations of the activities necessary to carry out the requirements of sedentary, light, and medium work." Id. These elaborations may be used "to determine if an individual has the ability to perform the full range of sedentary, light, or medium work from an exertional standpoint." SSR 83-10, 1983 WL 31251, at *5. "[D]ecision-makers 'may,' but are not obligated to, use the elaborations." Hyatt, 1998 WL 480722 at *3.

Sedentary and light work are generally distinguishable in the amount of standing, walking, and sitting each requires. Sedentary jobs generally require occasional standing and walking, and because "being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5. The full range of light work, in contrast, requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Id.

Social Security Ruling 83-12 clarifies that there are special situations where a claimant may otherwise be able to perform either sedentary or light work but must alternate between periods of sitting and standing. SSR 83-12, 1983 WL 31253, at *4. "Such an individual is not

---

[6] At step five of the sequential evaluation process, the Commissioner must prove in one of two ways that a claimant remains able to perform other work available in the community. Where the claimant has purely exertional impairments, the ALJ may apply the grids, contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, to establish that claimant's vocational ability. See McLain v. Schweiker, 715 F.2d 866, 870 n.1 (4th Cir. 1983). If, however, the claimant suffers from non-exertional impairments, such that the grids do not encompass his particular limitations, the ALJ must consider vocational expert testimony. Id. Because Plaintiff's impairments fall in the latter category, expert testimony was required, and obtained, in this case.

functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work." Id. This ruling acknowledges that an option to change positions at will is not ordinarily available in unskilled jobs. Hyatt, 1998 WL 480722, at *3. The ruling further recognizes, however, that this option may be available for some unskilled jobs and in "cases of unusual limitation of ability to sit or stand a [vocational expert] should be consulted to clarify the implications for the occupational base." SSR 83-12, 1983 WL 31253, at *4; see also Hyatt, 1998 WL 480722, at *3 (finding that the ALJ properly relied on expert testimony that identified some unskilled sedentary jobs with a sit/stand option).

Accordingly, where, as here, the ALJ finds that a claimant must alternate between sitting and standing and thus can perform less than a full range of light work, the ALJ is permitted to rely on the testimony of a vocational expert regarding the effect of that restriction on the occupational base. See Walls v. Barnhart, 296 F.3d 287, 289-90 (4th Cir. 2002). The Fourth Circuit in Walls reversed the district court's holding that a "special clarity" standard of review is required where the expert's testimony "contradicts, or at least creates an exception to, SSR 83-12's statement that unskilled or sedentary jobs are particularly structured to preclude a sit/stand option." Id. at 290-91 (internal quotation marks and brackets omitted). Rather, the Court found that there is "no contradiction" between SSR 83-12 and a finding that there are a significant number of unskilled light- and sedentary-level jobs in the national economy that a claimant who requires a sit/stand option can perform. Id. at 291.

The Sixth Circuit in <u>Wiergowski v. Comm'r of Soc. Sec.</u>, No. 95-2011, 1996 WL 520786, at *2 (6th Cir. Sept. 12, 1996) (unpublished), similarly rejected a claimant's argument that SSR 83-12 disqualifies workers requiring a sit/stand option from performing unskilled light and sedentary work. The Court instead held that SSR 83-12 requires vocational expert testimony to clarify the implications of a sit/stand option of the occupational base, and that the ALJ properly relied on such testimony. <u>Id.</u> The Court further found that SSR 83-10 does not stand for the proposition that a sedentary worker would be forced to sit for six hours of a work day. <u>Id.</u> at *3. "As the vocational expert made clear, . . . the jobs identified would allow the claimant the option of sitting or standing to relieve his discomfort." <u>Id.</u>

In the present case, as in <u>Walls</u> and <u>Wiergowski</u>, the ALJ did not find that Plaintiff could perform the full range of light work, but instead qualified Plaintiff's ability to sit, stand, and walk with her additional need to alternate between sitting and standing hourly. Having so found, the ALJ properly asked the vocational expert to clarify the implications of the sit/stand option of the occupational base of light work, and properly relied upon the expert's identification of jobs that Plaintiff can perform.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #7] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #9] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 13th day of August, 2014.

/s/ Joi Elizabeth Peake<br>United States Magistrate Judge